Good morning, your honors. May it please the court. My name is Benjamin Brenner and I represent David Sproul, the appellant in this matter. I'm going to ask that I reserve two minutes for rebuttal in this matter. And understand I'll be keeping track of my own time. In this case, this appeal is based on the fact that the district court at trial denied Mr. Sproul the opportunity to present his sole proffered witness and the opportunity to a jury instruction on his theory of the defense, and that in doing so, he was deprived of his right to effectively present his theory of the defense and to present a defense to the jury. His theory of the defense was good faith, a good faith belief that what he was doing was lawful, was not illegal. Is that right? That is correct. The court did give a good faith instruction. Is that right, too? Yes. And so what you're telling us is that you have some kind of a right in this case to tailor your own good faith defense instruction as compared to the district courts? No, that's not our contention. We understand that the defendant is not entitled to an instruction in any specific language, that he's not entitled to the specific instruction that he requested. What we are arguing is that the court's good faith instruction was defective in some way. Well, we're arguing that in addition to the good faith instruction that the court gave, Mr. Sproul was entitled to an instruction that helped to pinpoint what his actual theory of the defense was. What case are you relying on that says that you're entitled to that pinpointing instruction in addition to? I'm aware of no specific authority that supports the argument that we are entitled to that. I'm not either. That's why I want to know how you're going to get there. Well, I do not know of a case on point on that specific point. I obviously researched that and did not discover one. So you're asking us to so hold in this case? We're asking you to recognize that Mr. Sproul was entitled to an instruction that directed the jury as to where his good faith lay, that gave them guidance in terms of understanding what his theory of the defense was. Our quarrel is not with the good faith instruction that was given. It's with that considered cumulatively, the instructions that the jury was given did not allow him to present his theory of the defense to the jury. He could certainly argue it and did. Isn't that correct? He did argue it. But I think that in this matter, the only the only and this links in with the other issue in this appeal, which is his inability to put on his expert witness. The only testimony, the only evidence that Mr. Sproul had in support of his theory was coming out of his own mouth. And realistically, as soon as he takes the stand and testifies, that testimony is going to be at a discount. He's the defendant. He has the most vested interest in that case. And counsel can argue, as I'm doing, as counsel did at trial, all they want. But if when all you have is that sort of evidence, then the failure to have the corroborating and the the instruction that effectively told the jury where they need to look in assessing Mr. Sproul's good faith prevented him from presenting a defense, from putting on his theory of the defense in this case. I want to turn to an issue that the government raises in their brief, which is the appropriate standard of review on the on the failure to instruct. The government argues that this should be reviewed for plain air. You think it's for plain air? Yes, we believe it's We've got your item. OK. Specifically turning to the to the issue of whether or not the district court erred in preventing Mr. Sproul from putting on his his proffered expert witness, we submit that the analysis the district court engaged in under a rule of evidence 403 was faulty. The court did find that this that the evidence that's part of the proffered testimony would have been relevant. It would have been relevant in terms of assessing that it would have been relevant as a predicate to assessing whether or not Mr. Sproul had the requisite intent here. That is the intent to the expert answer in response to a judge's question that he would not advise any of his clients to do what your client did. He did. He did. And I think that that's in that sort of a case. The thing does speak for itself. If if he would have advised clients to do that, then there's a chance Mr. Sproul wouldn't have found himself indicted and charged in a prosecution. But the key that the expert was going to say is that looking at in his experience as an ATF agent and his experience with the ATF regulations that issue here and looking at how Mr. Sproul behaved at the invoices and his understanding of what Mr. Sproul did, that was nonetheless permissible. It may not have been smart. It might not have been a good business decision. He's not going to do it again. He's certainly learned permissible vis-a-vis who the government vis-a-vis the ATF regulations. Was it permissible vis-a-vis the receiver? I would argue that it was permissible. I mean, was that the expert's testimony that was permissible vis-a-vis? Well, the expert was not in a position, I think, to testify as to what the law of receivership was. That's why it probably wasn't an abuse of discretion. We argue that it was an abuse of discretion here because the key was that Mr. Sproul had an agreement with Mr. Bonacor. Regardless of the presence of the receiver, Mr. Bonacor was still running that business. Mr. Bonacor still received those invoices. He looked at them. He saw what the excise tax rate on them. And he forwarded them to the receiver. The testimony was, and I don't think that there's a dispute about this, is that by forwarding those invoices to the receiver, Mr. Bonacor was saying, yeah, this is in accordance with my agreement with Mr. Sproul and I'm recommending that these be paid. Oh, no, I didn't. I wasn't going to interrupt. Counsel, I think probably the argument will benefit if we hear from the other side and then give you a full opportunity to respond. Thank you. Tony, we're going to hold you up just for a second so that we won't interrupt you. Thank you for your indulgence, counsel. We welcome the Laurel School to the Ninth Circuit Court of Appeals. And you may proceed. Thank you, Your Honor. Your Honor, my name is Steve Lapham. I'm an assistant U.S. attorney in Sacramento and I was one of the trial attorneys on the case. Your Honor, as we stand here in circuit court, I think this is a case that's still in search of a theory of the defense. The mail fraud statute is at base a very simple statute. If you misrepresent a fact in order to induce someone to part with money, that's fraud. That's exactly what Mr. Sproul did in this case. Whatever the ATF regulations said about who was eligible for taking that excise tax, the pure fact is that Mr. Sproul induced the receiver to believe that he was paying 17 cents a gallon. Didn't Mr. Sproul have an arrangement with Mr. Bonacor that made this perfectly legal as between the two of them? There's no evidence of that, but even if that's true... There's no evidence that Mr. Bonacor and Mr. Sproul had a deal? I'm sorry, there is evidence through Mr. Sproul. No, but that's both because the statements went and then were passed on so that they didn't just go directly from Sproul. And they had an understanding with each other, and the understanding came apart when he refused to pay the $4,000 a month for expenses. Well, Mr. Bonacor did not testify in this trial, but even if that's true, even if there was some agreement, the fact is that theory might work if Mr. Sproul had not made direct misrepresentations to the receiver. Are you talking about the letter that didn't answer the question? Exactly. I don't see how that's a direct misrepresentation. It's a failure to answer a question. Well, it was a direct question put to him, and he explained how the excise tax worked. I'm having trouble understanding your case. It seems that Mr. Bonacor and Mr. Sproul have a deal. Bonacor comes, he can't pay the $4,000, and so Sproul says, okay, well, I'll make up the difference between the two taxes. And they agree, that's perfectly okay. Then the receiver comes onto the scene. Does the receiver step into different shoes than Bonacor and Coase? The receiver steps into the shoes of Bonacor for some purposes. The receiver is appointed to run the business, and to override Mr. Bonacor's decisions... What happens to the $4,000 that went out the window when they made this deal? I mean, it seems to have been a quid pro quo. Well, there is no written physical evidence of that. That is purely through the testimony of Mr. Sproul. That information was never passed on to the receiver. Did the government ever talk to Mr. Bonacor about this? Well, Mr. Bonacor didn't testify. Did the government ever talk to him about this? No. No? Mr. Bonacor refused to talk to us. Was he given immunity? No. No, but that wasn't part of our case. Our case was that he refused to testify. So, what I know is that they had some kind of misrepresentation to the receiver. What I don't understand is if what was going on between Mr. Sproul and Mr. Bonacor was perfectly all right, then the receiver comes onto the scene and seems to step into the shoes of Mr. Bonacor. How come that becomes a misrepresentation? The receiver doesn't step into the shoes of Mr. Bonacor for all purposes. There is a certain adversary relationship here. Mr. The receiver is appointed to round up the assets of Mr. Bonacor and to liquidate them on behalf of the client bank. Mr. Bonacor presumably isn't very happy about that situation. But the fact is, Mr. Sproul induced the receiver to believe that he was paying the excise tax at the rate of $1.17 a gallon. Does your entire case then rise and fall on the response to the inquiry? Response to the inquiry about how the tax is calculated? No. No. The receiver was receiving those invoices from Mr. Sproul. Mr. Sproul sent those, several of those receipts directly to the receiver via fax. He knew that those receipts were being sent to Mr. Bonacor. He knew that he was paying at $1.17 a gallon. Why isn't this a case where a special instruction is involved? This is a little bit off the beaten track in terms of a receiver coming in, taking over for somebody who had a lawful agreement with somebody else, and all of a sudden the minute the receiver takes over, it necessarily becomes unlawful? Well, I can't speak to why a different procedure wasn't used. Shouldn't there be? What about an instruction in this case? It seems like it's off the beaten track of the usual kind of a fraud, mail fraud case. An instruction of what type? Good faith. Well, the defense got a good faith instruction in spades. I mean, the – I think the court made a very valid point that it – the defense had all the tools it needed to argue good faith to the jury. It – there's no law that says – Well, he says it didn't have, and that's the problem, and I think that's what you're both talking around. The – his point was the only way his answer could be an accurate answer would be that he had the side agreement and that it was understood between the two of them that this is what is going to be paid in excise taxes and this is how it's going to be paid, and because he didn't get his special instruction, he argues, I wasn't isn't a broad good faith. It's how in the world do you say you pay X dollars in excise tax when you're not paying it, and he said, I wanted this instruction so I could argue. That's how I can say it. But he's not entitled to instruction that pinpoints his defense. I understand it. The judge is not required to highlight that – All I'm telling you is what his argument is so you can answer it if you can. Right. And – Or if you want to. He had all the tools. He had all the tools. That's what argument is for, to take the jury instruction and to say, look, ladies and gentlemen, this is what this means. You cannot convict my client if he had a good faith belief, and the mail fraud instruction itself said you cannot convict my client unless you find that he had a desire or intent to cheat the receiver. So – Your theory is the point he's arguing now he could have handled in closing argument? Could have handled and did handle in closing argument. And the only thing that his instruction would have added to the mix is for the judge to highlight specifically and perhaps, in the jury's view, give the court's approval to the argument that he was making. And no defendant is – and no party is entitled to that type of imprimatur. On the instruction, do you continue to argue that it's a plain air review? I do, for this reason. As we stand here today, we can't tell exactly what it is that the defense was complaining about before the district court. And I'm prohibited from going outside the record, but I was in the chamber's discussion, and I know what was said there. And as we – I think it's a bad thing to do to assume what was – Well, now you're asking us to assume something from something that's not there. I'm simply asking you not to assume something that's not there. I've got your point. Do you have anything to say about the expert witness, or do you submit that on the brief? I would say this. I quoted this on page 8 of my brief. The district judge, actually what he said was that this is of marginal relevance. And I think he was being polite there to counsel. What he actually said was, and he got counsel, defense counsel to agree to this, that the essence of Losa's testimony was that there was no ATF regulation that prohibited Spruill from taking the credit without disclosing that fact to the receiver. That was the sum and substance of the relevance that defense counsel agreed to. And that is simply not relevant to a mail fraud statute. What's relevant is whether he lied to the receiver. Thank you, counsel. Mr. Brenner, you may respond. Thank you. Mr. Brenner, maybe it will help you if I ask you – help you, I don't – I mean, help you see the problem. Your opponent says what you wanted to do, you could have done it in closing argument, and that was done in closing argument. And I gather what the problem is, and I wish you'd tell me why it's not, was the receiver asked you a specific question, an answer was given, the answer was – would mislead the receiver, and the person giving the answer knew, had to know, that it would mislead the receiver. Does that make it a lie? And if it does, your client's got some problems. Well, it wasn't a lie, because Mr. Sproul had the agreement with Mr. Bonacor, and he believed that – I understand what you're saying, but follow me. Was it misleading? I don't – I don't believe it was misleading. You don't think the receiver would be misled when the receiver received that? He certainly didn't intend to mislead the receiver. He intended to let the receiver know, this is what my agreement with Bonacor is. This is what I'm paying him. Doesn't show – doesn't say it anywhere. Well, I think that's – that is – I believe that – footnote, he didn't do anything. He just answered the question, and the answer he gave was a misleading answer. I think that there is something to be said that Mr. Sproul certainly could have documented what he was doing better. He could have run his business better. He didn't. The fact of the matter here is, though, that he earnestly believed that his agreement with Gregory Bonacor was – he was going to be reimbursed the dollar seven. And in fact, if his $4,000 administrative fee had been in – in place, and the receiver could have asked him, what – what do I owe you there? Well, $4,000. The receiver came out ahead. Was there documentation of the $4,000 administrative fee? There were not. No bank account? Other – $4,000, $4,000, $4,000, zero? That was – that was not – not presented at trial, to my knowledge. The – this – these are two businessmen. They're longtime friends. They're working in a relatively informal manner using oral agreements, and – and that's why there is no documentation. I want to respond to one question that seemed to be on the panel's mind, which is, where was Gregory Bonacor at the trial? We attempted to – to contact him, to call him as a witness. He, as I understand it, was being investigated and would have invoked the Fifth Amendment privilege and hence was essentially unavailable to us. Certainly we would have loved to have put Mr. Bonacor on – on here to provide what is the missing link, I think, in terms of this – the substance of their agreements and the – and the proof of those agreements. And unless the Court has further questions for me – Thank you, counsel. The case just argued is order submitted, and we'll call the next case on the calendar, which is –
judges: Farris, Trott, Weiner